IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
BRYSON CITY DIVISION
CIVIL ACTION NO. 2:12CV29-RLV

| | |
|---|---|
| WILLIAM DAVID GRIFFIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM and ORDER** |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on Plaintiff William David Griffis' Motion for Summary Judgment (Doc. 12), Defendant Carolyn W. Colvin's Motion for Summary Judgment (Doc. 17), and the supplemental briefs of the parties relating to the impact of the Fourth Circuit's recent decision in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015), on Plaintiff's claims. (Dos. 21, 22). Having carefully considered such motions and reviewed the pleadings, the Court enters the following findings, conclusions, and Order.

**I. BACKGROUND OF THE LAW**

The Social Security Administration ("SSA") has established a five-step sequential evaluation process for determining whether an individual is disabled.[1] 20 C.F.R. §§ 404.1520(a)

---

[1] 20 C.F.R. §§ 404.1520 and 416.920 articulate the five-step evaluation process: (1) if the claimant is performing substantial gainful activity, the SSA will automatically find that claimant is not disabled at the first step; (2) if the claimant does not have a medically determinable physical or mental impairment, or combination of impairments, that is severe and meets the duration requirement, the SSA will automatically find that claimant is not disabled at the second step; (3) if the severity and nature of claimant's impairment equals one of those listed in 20 CFR 404, Subpart P, App. 1, the SSA will automatically find that claimant is disabled at the third step, or the evaluation will proceed to assess claimant's residual functional capacity; (4) considering claimant's residual functional capacity, if claimant can perform past relevant work, the SSA will automatically find that claimant is not disabled at the fourth step; (5) considering claimant's residual functional capacity, age, education and work experience, if

and 416.920(a). If it is determined that a claimant is or is not disabled at one step, the SSA or Administrative Law Judge ("ALJ") will issue a decision without proceeding to the next step in the evaluation. A claimant's residual functional capacity ("RFC") is determined after step three has been completed, but before step four begins, in order to determine what level of physical and mental exertion the claimant can perform at work. 20 C.F.R. § 404.1545(a) and § 416.945(a). The ALJ determines the RFC by assessing the claimant's ability to do physical and mental activities on a sustained basis, despite limitations from identified impairments and claimed symptoms that are reasonably consistent with objective medical evidence and supported by other evidence. 20 C.F.R. §§ 404.1529, 404.1545, 416.929, and 416.945.

In addition to the five step process, regarding disability and disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §401 *et seq*, the Plaintiff must show that she was disabled prior to her date last insured ("DLI"). *Bird v. Comm'r of Soc. Sec.*, 699 F.3d 337, 341 (4th Cir. 2012); 20 C.F.R. §§ 404.101, 404.130, 404.131.

## II.     STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner—so long as that decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456 (4th Cir. 1990); *see also*, *Smith v.*

---

claimant can adjust to perform other work, the SSA will find that claimant is not disabled at the fifth step, or, if claimant cannot adjust to perform other work, the SSA must find that claimant is disabled.

*Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Hancock v. Astrue*, 657 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Perales*, 402 U.S. at 401). Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456; *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case *de novo* when reviewing disability determinations."); *Seacrist v. Weinberger*, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

### III.　THE ALJ DECISION AND APPEAL

On October 9, 2009, Plaintiff filed for Title II Disability Insurance Benefits and for Title XVI Supplemental Security Income. (Tr. 16). Plaintiff alleged that his disability began on October 5, 2009. (*Id.*). His claim was initially denied on March 9, 2010, and was denied upon reconsideration on July 6, 2010. (*Id.*). He then requested a hearing, received one, and was again denied on March 9, 2011 (*Id.*).

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 5, 2009. (Doc. 8-3, 18). At step two, the ALJ found that Plaintiff had the following severe impairments: Non-Hodgkin's lymphoma in remission, degenerative disc

disease of the cervical and thoral spine, Tarlov/arachnoid cyst of the lumbrosacral spine, depression disorder, and anxiety disorder. (*Id.* at 18–19). At step three, the ALJ found that none of Plaintiff's impairments or combination of impairments satisfied the Listings. (Id. at 19–21).

The ALJ found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b). (*Id.* at 22). However, she limited Plaintiff to "performing unskilled work that involves no more than occasional interactions with the public." (*Id.*). Additionally, the ALJ found that:

> The claimant can lift and carry 20 pounds occasionally and 10 pounds frequently. The claimant can sit, stand, and walk for about 6 hours each out of an 8-hour workday. The claimant can occasionally climb, including ladders. The claimant can frequently balance, stoop, crouch, kneel, and crawl. The claimant must be allowed to change positions between sitting and standing. The claimant must avoid concentrated exposure to hazards.

(Doc. 8-3, 22). The ALJ stated that the record showed Plaintiff was capable of performing light work as limited above. (*Id.*).

The ALJ recounted that Plaintiff alleged that he was unable to work due to constant throbbing pain in his back and chronic fatigue. (*Id.*). Additionally, the ALJ recalled Plaintiff's claims that he had trouble sleeping due to night sweats and back pain, and that he could not walk or stand for an extended period of time without fatigue. (*Id.*). The ALJ also referenced Plaintiff's claims that he had difficulty sustaining periods of concentration. (*Id.*).

However, the ALJ ultimately found Plaintiff's claims not wholly credible. (Doc. 8-3, 23). One indication of Plaintiff's lack of credibility, according to the ALJ, was the fact that Plaintiff stopped working in June 2008 because he was laid off, not because he was disabled. (*Id.*). Additionally, the ALJ notes that Plaintiff has a history of past legal problems relating to burglary and theft. (*Id.*). The ALJ also stated that the Plaintiff gave inconsistent statements

4

regarding his use of alcohol and illegal drugs. (*Id.*) Additionally, the ALJ found Plaintiff's daily activities, such as taking care of his personal needs independently, cooking, driving, going to the grocery store, watching the news on television daily, playing with his dogs, and visiting with family and neighbors, indicative of Plaintiff's lack of credibility regarding his claims of disability. (*Id.* at 24).

In determining Plaintiff's RFC, the ALJ relied on Plaintiff's own testimony that the pain from his cancer is tolerable if he takes Naproxen. (Doc. 8-3, 25). The ALJ also recounted Dr. Provost's records, which indicated predominately-normal physical exams, as support for the RFC finding. (*Id.*) Additionally, the ALJ found records from Cancer Care of WNC that supported the RFC, noting that Plaintiff stated his back pain was improving, he "felt overall better", and that his energy level had improved. (*Id.*) Likewise, Dr. Pekal's records indicated that a CT scan showed no recurrent lymphoma and no obvious cause for Plaintiff's symptoms. (*Id.*) The ALJ also found Dr. Soosaar's records which were consistent with the RFC, stating that Plaintiff had a normal physical exam, was doing overall well, had decreased pain, and was eating without nausea. (*Id.*)

The ALJ accounted for Plaintiffs mental functioning by "limiting him to unskilled work with no more than occasional interaction with the public." (Doc. 8-3, 27). To support the designated RFC, the ALJ relied on Plaintiff's own statements that, though he is depressed, his medication helps his symptoms and "it's not that big of a deal." (*Id.*). Rather, Plaintiff claimed that his physical pain and fatigue were the main reasons he could not work. (*Id.*). Additionally, the ALJ noted that examination records from Harris Regional Hospital provide that Plaintiff "exhibited appropriate mental status, appropriate behavioral pattern, normal thought processes, and no acute emotional problems." (*Id.*). The ALJ also gave great weight to the opinions of Dr.

5

Mock as a basis for the RFC. (*Id.*). Dr. Mock determined that Plaintiff had a Global Assessment of Functioning score of 80, indicating only transient mental symptoms. (Exh. 12F, 577).

At step four, the ALJ concluded that Plaintiff could not perform past relevant work. (*Id.* at 28). At step five, the ALJ, with the assistance of a vocational expert, found that there were jobs that existed in the national economy that Plaintiff could have performed given his RFC, age, education, and work experience. (*Id.*)

## IV. ANALYSIS

### A. The ALJ developed the record appropriately.

Plaintiff claims that "[t]he ALJ did not make a reasonable effort to ensure claimant's file contain[ed] evidence to properly assess the claimant's RFC in her determination the claimant could do other work, as required by SSR 96-8p." (Doc. 13, 16). Specifically, Plaintiff argues that [t]he ALJ failed to order or recommend a pre-Hearing or post-Hearing examining consultative physical evaluation to determine the effects that that claimant's physical impairments and subjective complaints would have on his ability to work a normal work schedule." (*Id.*)

The Fourth Circuit has held that "the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely on the evidence submitted by the claimant when the evidence is inadequate." *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986) (citing *Walker v. Harris*, 642 F.2d 712, 714 (4th Cir. 1981); *Marsh v. Harris*, 632 F.2d 296, 300 (4th Cir. 1980)).[2] "It is important to note that in both cases

---

[2] *See Walker*, 642 F.2d at 714 (stating "[i]n a great number of cases, courts of appeals have found good cause to remand where the administrative law judge fails diligently to explore all relevant facts especially in cases of uneducated, *pro se* claimants and where the absence of counsel appears to prejudice

cited by the *Cook* court, the plaintiffs appeared *pro se* and were either illiterate or had very minimal formal education." *Smith v. Astrue*, 2012 WL 3191296, at *4 (W.D.N.C. July 3, 2012).

Furthermore, it is within the discretion of the ALJ to order a consultative physical examination. *See* 20 C.F.R. § 404.1519a ("We *may* purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim.") (emphasis added). Indeed, where the ALJ relies on opinions from State agency physicians that are supported by the other evidence, the record is adequate to support a decision. (*See Carroll v. Astrue*, No. 12-386, 2013 WL 431839, at *3 (W.D.N.C. Jan. 15, 2013) ("Under Social Security Administration ("SSA") regulations, the expert opinions of the examining medical sources and state agency reviewing doctors may amount to substantial evidence where they represent a reasonable reading of the relevant medical evidence."), *aff'd*, 2013 WL 431830 (W.D.N.C. Feb. 4, 2013).

Here, Plaintiff was represented by counsel at the administrative hearing. Furthermore, Plaintiff's counsel informed the ALJ that the record would be complete following forthcoming evidence from Dr. Pekal and Mountain Spine Care. (Tr. 39). The ALJ held the record open to allow Plaintiff to submit such additional evidence, which she thereafter considered. (Tr. 593–607). Therefore, "Plaintiff's representative may not rest on the record and then later attack the ALJ for failing to perform a more exhaustive investigation." *Hardy v. Astrue*, No. 11-299, 2013 WL 66082, at *7 (W.D.N.C. Jan. 4, 2013), *aff'd,* 2013 WL 566020 (W.D.N.C. Feb. 13, 2013).

Further, the ALJ was not required to order a consultative physical examination because the State agency medical consultants' opinions constitute a reasonable reading of the relevant

---

a claimant."); *see also Marsh*, 632 F.2d at 300 (stating claimant's "illiteracy and obvious lack of understanding of the evidence necessary to develop the critical issues were compounded by the absence of legal representation.").

medical evidence and are adequately supported by the evidence in the record. The ALJ gave great weight to the opinions of the State agency consultants. (Doc. 8-3, 28). However, the Plaintiff does not argue that such opinions are not supported by other evidence in the record. Further, the records of examining medical sources Dr. Provost, Cancer Care of WNC, Dr. Pekal, and Dr. Soosaar all support the finding that Plaintiff is able to engage in light work with the limitations specified by the ALJ. (Doc. 8-3, 25–27).

**B. The ALJ conducted a proper function-by-function analysis.**

Plaintiff claims that the ALJ failed to make a function-by-function assessment, classifying Griffis' RFC as light work with postural and environmental limitation and limited to unskilled work that involves no more than occasional interaction with the public without discussing his specific functional limitations in each area as required by SSR 96-8p. However, Plaintiff fails to specify any limitations the ALJ failed to address.

SSR 96-8p requires that the ALJ assess the claimant's ability to perform work related functions listed in 20 C.F.R. § 494.1545(b), (c), and (d), including the ability to: sit; stand; walk; lift; carry; push; pull; perform manipulative and postural functions; understand, remember, and carry out instructions; and respond appropriately to supervision, co-workers, and work pressures in a work setting. 1996 WL 374184 at *1. In *Mascio*, the Fourth Circuit held that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's opinion frustrate meaningful review." 780 F.3d at 636 (4th Cir. 2015). However, the Court went on to hold that remand is not always required when an ALJ fails to perform an explicit function-by-function analysis, such as in cases "where the ALJ does not discuss functions that are irrelevant or uncontested." *Id.* at 636.

8

Here, *Mascio* does not require remand because the ALJ adequately addressed plaintiff's functional limitations when assessing Plaintiff's RFC. The ALJ set forth that Plaintiff "can sit, stand, and walk for about 6 hours out of an 8-hour workday." (Doc 8-3, 22). Additionally, the ALJ stated Plaintiff "can lift and carry 20 pounds occasionally and 10 pounds frequently." (*Id.*) Furthermore, the ALJ also stated that Plaintiff "can occasionally climb, including ladders . . . [,] can frequently balance, stoop, crouch, kneel and crawl" and maintained that Plaintiff "must be allowed to change positions between sitting and standing" and "avoid concentrated exposure to hazards. (*Id.*) Further, in limiting Plaintiff to "performing unskilled work that involves no more than occasional interaction with the public", the ALJ accounted for Plaintiff's ability to understand, remember, and carry out instructions, and respond appropriately to supervision, co-workers, and work pressures in a work setting. Though the ALJ did not specify how long Plaintiff can push or pull, Plaintiff put forth no evidence of a limitation in those areas. Therefore, the present case is distinguishable from *Mascio* and does not require remand because the ALJ discussed each function that was not irrelevant or uncontested.

Additionally, *Mascio* does not require remand in the present case because "there was no conflicting evidence . . . that the ALJ did not address" when making the RFC decision. 780 F.3d at 637. Rather than "being left to guess at how the ALJ arrived at [her] conclusions", this Court is able to determine what evidence, and to what extent, the ALJ relied on. The ALJ did not ignore any contradictory evidence, and stated that she gave great weight to Dr. Mock's opinion and to the opinions of the State agency medical consultants, and some weight to the State agency psychological consultants' opinions. (Doc. 8-3, 27–28) (stating, in fact, that the ALJ gave only some weight to the State agency psychological consultants' opinions because the consultant determined that the Plaintiff does not have a severe mental impairment, in contrast with the

9

ALJ's findings and the Plaintiff's own statements). Unlike in *Mascio*, the ALJ in the present case did not ignore contradictory evidence and did not put forth analysis which frustrates meaningful review. Thus, *Mascio* does not require remand in regards to the function-by-function analysis.

**C. The ALJ properly accounted for Plaintiff's mental limitations.**

Plaintiff claims that the ALJ failed to properly account for Plaintiff's moderate difficulties with social functioning and mild difficulties with regard to concentration, persistence, or pace. However, the present case is distinguishable from *Mascio* and thus does not require remand.

In *Mascio*, the Fourth Circuit held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.", 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011), because "the ability to perform simple tasks differs from the ability to stay on task." *Id.* Further, the Court noted that only a limitation regarding the ability to stay on task would account for a claimant's moderate limitation in concentration, persistence, or pace. *Id.* Notably, in *Mascio*, the hypothetical the ALJ presented to the vocational expert said nothing about the claimant's mental limitations. *Id.*

The present case is distinguishable from *Mascio*, and thus does not require remand, for a number of reasons. First, the ALJ found Plaintiff suffered only mild limitations in concentration, persistence, or pace, as opposed to the moderate limitations the claimant in *Mascio* faced. Though this Court in *Reinhardt v. Colvin* held that *Mascio* clearly imposes on the ALJ a duty to explain why a mild limitation in concentration, persistence, or pace is not translated in the RFC finding, here, the ALJ relied on Dr. Mock's report to explain why Plaintiff's mild limitations in

concentration, persistence, or pace "do not translate into work-related limitations when plaintiff's RFC for work is considered." 2015 WL 1756480, at *3 (W.D.N.C. Apr. 17, 2015); *see* Doc 8-3 at 27 (ALJ recounting Dr. Mock's report that Plaintiff "had a Global Assessment of Functioning score of 80, indicating only transient symptoms."). Second, the hypothetical in the present case presented by the ALJ to the vocational expert took Plaintiff's mental limitations into account, unlike the hypothetical in *Mascio* which "said nothing about Mascio's mental limitations."[3] 780 F.3d at 637. Third, the ALJ in the present case "accounted for the effect upon the [Plaintiff's] mental function arising from his mental symptoms and physical problems by limiting him to unskilled work with no more than occasional interaction with the public." (Doc. 8-3, 27). Unlike in *Mascio*, where the ALJ took no steps to explain why moderate limitations in concentration, pace or persistence did not translate into a limitation, here, the ALJ supports limiting Plaintiff to unskilled work by citing Dr. Mock's opinion that any concentration, persistence, or pace issue did not interfere with Plaintiff's ability to work.[4] Additionally, the record supports a finding that there are no limitations. *See* Exh. 12F at 576–77 (Dr. Mock reporting that Plaintiff "showed no impairment in his ability to concentrate or pay attention", scored a thirty out of thirty on a Mini-Mental Status Exam, and assessing Plaintiff at a Global Assessment of Functioning score of 80, which indicates only transient mental symptoms). Therefore, the case does not require remand under *Mascio*.

---

[3] *See* (Doc. 8-3, at 64) ("Because of the - - at this point in time, because of the depression and all I'm - -and his lack of concentration, I'm going to go with unskilled work and probably only occasional interaction with the public. I don't think he's not a social problem but I don't think that he's got the wherewithal to deal with the public daily at this moment.").

[4] *See* (Doc 8-3, 28) (ALJ recounting Dr. Mock's report on Plaintiff, which stated that Plaintiff "could understand and respond to written and verbal directions; had no impairment to his ability to concentrate or pay attention; had no memory deficits; and could maintain 'social integration with others as his energy level permits'." (citing Exhibit 12F)).

**D. The ALJ properly analyzed Plaintiff's subjective complaints and credibility.**

Plaintiff claims that the ALJ failed to properly consider and evaluate Griffis' complaints of chronic fatigue, pain, and depression and failed to analyze credibility aside from the use of the same boilerplate language used by the ALJ in *Mascio*. However, the ALJ properly considered Plaintiff's subjective complaints and found that they were not completely credible. Additionally, because the ALJ discussed credibility elsewhere, as opposed to solely through the boilerplate language, *Mascio* does not demand remand.

The Fourth Circuit has established that an ALJ is not required to accept a claimant's subjective complaints without question. *Craig v. Chater*, 76 F.3d 585, 591 (4th Cir. 1996). Rather, "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Id.* Though the claimant need not produce objective evidence of the pain itself or of its intensity, "there must be objective medical evidence of some condition that could reasonably produce the pain[.]" *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989).

In *Mascio*, the Fourth Circuit held that "the ALJ erred by determining [Mascio's] residual function capacity before assessing her credibility." 780 F.3d at 639. The non-harmless error stemmed from the ALJ's use of the following boilerplate language:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functioning capacity assessment.

*Id.*

The court stated that "the ALJ should have compared Mascio's alleged functional limitations from pain to the other evidence in the record, not to Mascio's residual functional capacity." *Id*. The court did go on to hold, however, that the ALJ's error of using the boilerplate to determine credibility would be harmless if the ALJ properly analyzed credibility elsewhere. *Id.*

In the present case, the ALJ was not required to accept Plaintiff's subjective complaints without question because Plaintiff failed to support his claims of chronic fatigue and pain with objective medical evidence. The ALJ determined that there is no objective medical evidence of a severe impairment which could reasonably result in Plaintiff's alleged pain and fatigue. To the contrary, Dr. Pekal stated that he was unsure as to the cause of Plaintiff's recurring symptoms and had no good explanation for Plaintiff's symptoms, including his fatigue and pain. (Exh. 13F, 581; Exh. 14F, 590). Additionally, both Dr. Pekal and Dr. Provost stated that there was no evidence that Plaintiff's lymphoma was recurring or otherwise causing his symptoms. (Exh. 13F, 579; Exh. 14F, 590).

Furthermore, while the ALJ found Plaintiff suffered from depression, Plaintiff only alleged that such depression impaired his ability to concentrate, which the ALJ found to be only a mild limitation that was adequately accounted for by limiting Plaintiff to unskilled work with no more than occasional interaction with the public. Contrary to Plaintiff's one-sentence argument that the post-hearing psychological examination with Dr. Pardoll supports his subjective claims of chronic fatigue, pain, and depression, Dr. Pardoll's report does not constitute objective medical evidence of an impairment likely to cause the symptoms alleged because Dr. Pardoll's statements were not based on a physical examination but rather on Plaintiff's statements. (Exh. 17F, 610–13); *see also Mastro v. Apfel*, 270 F.3d 171, 178–79 (4th

13

Cir. 2001) (holding that the ALJ may give little weight to an opinion based largely on a claimant's subjective complaints). Thus, because there is no objective medical evidence of any condition reasonably likely to cause Plaintiff's chronic fatigue, pain, and depression, the ALJ was not required to accept Plaintiff's subjective claims.

Additionally, though the ALJ did use the same boilerplate language as the language at issue in *Mascio*, the ALJ properly analyzed credibility elsewhere. The ALJ did not rely on the determined RFC to assess credibility, but instead relied on the evidence, stating that "[t]he record in this case establishes that the claimant's contentions regarding his symptoms and limitations are not wholly credible." (Doc. 8-3, 23). Furthermore, "[t]he ALJ did offer reasons grounded in the evidence, and so we can proceed to examine them." *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012).

First, the ALJ found Plaintiff not wholly credible because he stopped working in June 2008 because he was laid off, not because he was disabled.[5] Second, the ALJ also noted that Plaintiff had a history of past legal problems related to burglary and theft. Third, the ALJ relied on the fact that Plaintiff gave inconsistent statements regarding his drug and alcohol use.[6] Fourth, the ALJ properly considered Plaintiff's testimony of his daily living, such as playing with his dogs, cooking, watching television, going to the grocery store, driving, taking care of his personal needs independently, and visiting family members and neighbors as inconsistent with his claim of disability. *See Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005) (upholding

---

[5] *See Cauthen v. Finch*, 426 F.2d 891, 892 (4th Cir. 1970) (citing the fact that the claimant stopped working of her own volition, rather than because of her impairments, among the substantial evidence supporting the finding that the claimant was not disabled).

[6] Though the court in *Mascio* found a similar justification non-compelling, here, the ALJ's use of other more compelling justifications for finding a lack of credibility out-weighs the use of this possibly non-compelling justification.

14

the ALJ's finding that claimant's activities including attending church, reading books, watching television, cooking, cleaning, visiting relatives, feeding the family pets, etc., as inconsistent with her claims of disability). Thus, *Mascio* does not require remand here because the ALJ did not rely solely on boilerplate language to express her finding credibility finding, but instead gave reasons supported by evidence in the record to find Plaintiff not wholly credible.

**IT IS, THEREFORE, ORDERED THAT:**

(1) Plaintiff William Griffis's Motion to Remand is **DENIED**; and

(2) Defendant Carolyn W. Colvin's Motion for Summary Judgment is **GRANTED**.


Signed: July 22, 2015

Richard L. Voorhees
United States District Judge